**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.B.-1 and A.B.-2**

**No. 21-0859** (Mercer County 20-JA-30 and 20-JA-31)

**MEMORANDUM DECISION**

Petitioner Mother A.B.-3, by counsel John G. Byrd, appeals the Circuit Court of Mercer County's September 21, 2021, order terminating her parental rights to A.B.-1 and A.B.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Patricia Kinder Beavers, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights instead of employing a less restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an abuse and neglect petition against petitioner, the father, and petitioner's boyfriend in February of 2020, raising allegations of drug abuse. Specifically, the DHHR alleged that petitioner, her boyfriend, and the children were living in a hotel room, and that petitioner and her boyfriend were trafficking methamphetamine out of said hotel room. A Child Protective Services ("CPS") worker spoke to A.B.-1's teacher, who reported that petitioner's behavior had changed recently, that she had developed sores on her face, and that she left the children with the grandmother for weeks at a time without providing the necessary documentation for their care, such as medical appointments and educational decisions. The CPS worker and law enforcement

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children and petitioner share the same initials, we will refer to them as A.B.-1, A.B.-2, and A.B.-3, respectively, throughout this memorandum decision.

officers located petitioner in a hotel room with her boyfriend, a convicted felon, and a friend, who was also a convicted felon. Law enforcement officers found a gun in the room, which was confiscated due to petitioner's boyfriend and friend being persons prohibited from possessing a firearm. The DHHR further alleged that petitioner admitted to abusing controlled substances, and that her drug screen was positive for methamphetamine. A temporary protection plan was implemented, and the children were placed with their grandmother. Petitioner waived her preliminary hearing.

In June of 2020, the circuit court held an adjudicatory hearing. Petitioner stipulated that she neglected the children due to her substance abuse. The circuit court accepted petitioner's stipulation, adjudicated her as a neglecting parent, and granted her a post-adjudicatory improvement period. At a review hearing held in September of 2020, the circuit court was advised that petitioner completed a drug detoxification program but left the follow-up rehabilitation program prior to completion. A second review hearing was held in February of 2021. Petitioner failed to attend but was represented by counsel, who informed the circuit court that petitioner had not maintained contact with him. Per the circuit court's order, the DHHR proffered that petitioner was not participating in visits with the children and was not cooperating with drug screens.

The circuit court held a dispositional hearing in August of 2021. A CPS worker testified that petitioner's case plan required that she obtain stable housing and employment and seek treatment for her substance abuse. The worker stated that petitioner had not successfully completed a drug treatment program. While the worker indicated that petitioner recently expressed interest in obtaining treatment and did, in fact, enter treatment prior to the dispositional hearing, the DHHR's opinion was that it was too late in the proceedings. A service provider testified that petitioner had not visited with the children in over one year. The provider described her efforts to contact petitioner via text messages and phone calls but stated that petitioner was inconsistent in maintaining contact with her. In fact, the last time the service provider had contact with petitioner was February of 2021.

Petitioner testified that she entered an inpatient treatment program four days prior and had submitted to one drug screen thus far, which was negative. Petitioner admitted that she had not visited with the children in a long time and could not remember when her last visit occurred. Petitioner admitted to frequently moving throughout 2020 and to frequently changing her phone number during the proceedings. She further admitted that she had not consistently maintained employment.

Following testimony, the circuit court found that petitioner "simply has not done what she needed to do to get her drug problem resolved." The circuit court acknowledged that petitioner had entered into inpatient treatment but found that having been in treatment for only four days and being unable to answer when she last visited the children lent support to its findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests. Petitioner

2

appeals the circuit court's September 21, 2021, dispositional order terminating her parental rights to the children.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights instead of employing a less restrictive dispositional alternative. According to petitioner, the circuit court should have permitted her to retain her parental rights, terminating only her custodial and guardianship rights instead. Petitioner claims that she had employment at various times during the proceedings and was receiving medically assisted drug treatment, which the DHHR ignored throughout the proceedings. She further argues that the testimony at the second review hearing, held in February of 2021, does not indicate that she was not participating in drug screens or treatment as a reading of the transcript regarding the same states that certain testimony was inaudible and any resulting ruling was "basically on the mostly inaudible statements of the CPS worker." Petitioner states that she admitted that she had a substance abuse problem, completed a detoxification program, began submitting to medically assisted treatment, and stated she would submit to counseling. Accordingly, petitioner contends that the circuit court should have terminated only her custodial and guardianship rights as it would not have threatened the welfare of the children and would have allowed her to work on her substance abuse issues.

We find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

---

[2]The father's parental rights were terminated during the proceedings below. The permanency plan for the children is adoption by a relative.

3

not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner failed to follow through with services designed to reduce or prevent the abuse or neglect of the children. Although petitioner completed a drug detoxification program, she left her follow-up treatment program without completing the same. Further, she failed to maintain contact with her service providers and failed to regularly submit to drug screens. While petitioner claims she sought medically assisted drug treatment, the record does not support her assertion that she continued this treatment throughout the proceedings. It is true that petitioner initially sought medically assisted treatment after prematurely leaving her treatment program, but subsequent testimony indicated that petitioner never successfully completed any drug treatment program. Petitioner did not object to the testimony or present any evidence to the contrary. Moreover, when petitioner first indicated that she would obtain medically assisted treatment, the DHHR asserted that petitioner needed to attend inpatient drug treatment. However, petitioner failed to enter any inpatient drug treatment until four days before the dispositional hearing. Although petitioner takes issue with the transcript at the second review hearing, the circuit court's order clearly states that petitioner was not visiting with the children, a fact she admitted at the dispositional hearing, and that she was not submitting to drug screens. While we find that there is insufficient evidence that the circuit court's order is contradictory to the transcript, we nevertheless note that a court's written order controls. *See Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 107 n.5, 459 S.E.2d 374, 384 n.5 (1995) (finding that "where a circuit court's written order conflicts with its oral statement, the written order controls"). Further, petitioner's counsel did not object to either the testimony or the order.

Collectively, testimony establishes that petitioner did not have consistent housing during the proceedings; failed to maintain contact with the DHHR, her counsel, and service providers; and failed to visit with the children. In fact, petitioner could not remember the last time she visited with the children, and the service provider indicated that it had been over one year since petitioner had seen the children due to her failure to maintain contact with the service provider. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Ultimately, the circuit court found that petitioner had not remedied her substance abuse and could not remember the last time she visited the children—highlighting her lack of contact with them during the proceedings. This evidence is sufficient to support the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was in the children's best interests. To the extent petitioner argues that she should have been granted a less-restrictive alternative to the termination of her parental rights, we have held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia

4

Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, it is clear that petitioner failed to remedy the conditions of abuse and neglect and, thus, termination of her parental rights was not error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 21, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

**DISSENTING:**

Chief Justice John A. Hutchison